# EXHIBIT B-4

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
Miami, FL

| | |
|---|---|
| Appeal of: Family Foot and Leg Center | OMHA Appeal No.: 3-12682582007 |
| Beneficiary: J. D[redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: Mark Lacedonia<br>Administrative Law Judge |

## DECISION

After considering the evidence, an **UNFAVORABLE** decision is entered in the appeal of Family Foot and Leg Center PA (Appellant). The 15271 skin substitute graft and Q4244 Procenta wound covering provided to the Beneficiary on November 23, 2022 are not covered by Medicare. The provider is liable for any unpaid amounts pursuant to § 1879 of the Social Security Act.

## PROCEDURAL HISTORY

The Appellant submitted a claim to Medicare for 15271 skin substitute graft and Q4244 Procenta wound covering provided to the Beneficiary on November 23, 2022. The claim was denied initially and at redetermination. On June 9, 2023, the Medicare Part B QIC issued an unfavorable reconsideration decision. (File 2, p. 1). The QIC held that the use of Procenta for the Beneficiary's condition is investigational/experimental and that the procedure code 15271 was incorrectly billed (File 2, p. 5). The QIC further held the provider is liable for any unpaid amounts. *Id.*

The Appellant timely[1] filed a request for Medicare hearing before an administrative law judge (ALJ). The request for ALJ hearing satisfies the amount in controversy and therefore meets the jurisdictional requirements for a hearing before OMHA.[2] As such, the jurisdictional predicates are satisfied and the request for appeal of the unfavorable decision regarding whether Medicare coverage guidelines have been met for the 15271 skin substitute graft and Q4244 Procenta wound covering , which is covered by this decision, is properly before the ALJ for de novo review. The Appellant waived its right to a hearing and requested that a decision be based on the documentation submitted. (File 13).

## ISSUES

Whether Medicare coverage requirements have been met for the 15271 skin substitute graft and Q4244 Procenta wound covering provided to the Beneficiary on November 23, 2022 and, if not, to determine who is liable for any unpaid amounts.

---

[1] 42 C.F.R. § 405.1002(a)(1).
[2] 42 C.F.R. § 478.44.

## APPLICABLE LAW AND POLICY

Section 1832 of the Act establishes the scope of benefits that are provided to beneficiaries under the Medicare Part B insurance program. Under §1832(a)(2)(B) of the Act, an individual is entitled to have payment made on his/her behalf for medical and other health services furnished by a provider of services or by others under arrangement with them made by a provider of services. See also, 42 CFR §410.3.

Section 1862 (a)(1)(A) and 42 CFR §411.15(k) provides that only items and services that are "reasonable and necessary for the diagnosis and treatment of illness or injury or to improve the functioning of a malformed body member are covered under the Medicare program.

Section 1833(e) of the Act provides that "[n]o payment shall be made to any provider of services. . . unless there has been furnished such information as may be necessary in order to determine the amounts due such provider . . ." See also, 42 CFR §424.5(a)(6).

Section 1879 of the Act limits the liability of the beneficiary and providers of services if the services are found to be not medically reasonable and necessary under §1862(a)(1)(A) or care was custodial in nature under §1862(a)(1)(9). Payment will only be made pursuant to this section if neither the beneficiary nor the provider knew or could reasonably have been expected to know that the services were not covered. See also, 42 CFR §411.406. Pursuant to Section 1870(b) of the Act, if a provider/supplier was without fault with respect to a received overpayment, the provider/supplier is not liable for the overpayment.

In addition to binding regulations with the full force and effect of law, CMS and its contractors have issued policy guidance that describe criteria for coverage of selected types of medical items and services in the form of manuals, local medical review policies (LMRPs) and local coverage determinations (LCDs). Section 1869(f)(2) of the Act provides that ALJs will give substantial deference to LCDs, local medical review policies (LMRPs), or CMS program guidance when applicable, and if they do not follow the policy they must explain why in their decision. See also, 42 CFR §405.1062; Shalala v. Guernsey Mem. Hosp., 514 U.S. 87, 97, 99 (1995) (an agency may issue interpretive rules to advise the public of its construction of the statutes and rules that it administers).

The CMS Medicare Program Integrity Manual, Chapter 3, §3.11, explains that "[f]or Medicare to consider coverage and payment for any item or service, the information submitted by the supplier or provider [] must be corroborated by the documentation in the patient's medical records that Medicare coverage criteria have been met." It continues that the patient's medical records must be maintained by the physician, provider, and/or supplier and that they must be available to the contractor upon request. Moreover, sufficient documentation is required in order to confirm that an item or service was actually provided and billed at the appropriate level.

The CMS Medicare Benefit Policy Manual, Pub. 100-02, Chapter 15, §50.4.1 states:

> Use of the drug or biological must be safe and effective and otherwise reasonable and necessary. (See the Medicare Benefit Policy Manual, Chapter 16, "General Exclusions from Coverage," §20.) Drugs or biologicals approved for marketing by the Food and Drug Administration (FDA) are considered safe and effective for purposes of this requirement when used for indications specified on the labeling. Therefore, the program may pay for the use of an FDA approved drug or biological, if:

- It was injected on or after the date of the FDA's approval;
- It is reasonable and necessary for the individual patient; and
- All other applicable coverage requirements are met.

The carrier, DMERC, or intermediary will deny coverage for drugs and biologicals, which have not received final marketing approval by the FDA unless it receives instructions from CMS to the contrary. For specific guidelines on coverage of Group C cancer drugs, see the Medicare National Coverage Determinations Manual.

If there is reason to question whether the FDA has approved a drug or biological for marketing, the carrier or intermediary must obtain satisfactory evidence of FDA's approval. Acceptable evidence includes:

- A copy of the FDA's letter to the drug's manufacturer approving the new drug application (NDA);
- A listing of the drug or biological in the FDA's "Approved Drug Products" or "FDA Drug and Device Product Approvals";
- A copy of the manufacturer's package insert, approved by the FDA as part of the labeling of the drug, containing its recommended uses and dosage, as well as possible adverse reactions and recommended precautions in using it; or
- Information from the FDA's Web site.

When necessary, the regional office (RO) may be able to help in obtaining information.

**FDA**

For a product to be regulated as a human cells, tissues, and cellular and tissue-based product (HCT/P), it must meet specific regulatory requirements as established under section 361 of the of the Public Health Service (PHS) Act and further delineated in regulations at 21 C.F.R. § 1271.10. In general, if a product does not qualify as an HCT/P, by default the product must be regulated as a drug and/or biological under section 351 of the PHS Act and the Food, Drug, and Cosmetic (FC&C) Act; or must seek approval as a 510K medical device as per the FD&C Act. However, should a product be appropriately designated as an HCT/P under section 361, it may bypass the normal FDA drug/biological/device approval process and go straight to market to be sold to the public. The four criteria are:

(1) The HCT/P is minimally manipulated;
(2) The HCT/P is intended for homologous use only, as reflected by the labeling, advertising, or other indications of the manufacturer's objective intent;
(3) The manufacture of the HCT/P does not involve the combination of the cells or tissues with another article, except for water, crystalloids, or a sterilizing, preserving, or storage agent, provided that the addition of water, crystalloids, or the sterilizing, preserving, or storage agent does not raise new clinical safety concerns with respect to the HCT/P; and
(4) Either:
(i) The HCT/P does not have a systemic effect and is not dependent upon the metabolic activity of living cells for its primary function; or
(ii) The HCT/P has a systemic effect or is dependent upon the metabolic activity of living cells for its primary function, and:

(a) Is for autologous use;
(b) Is for allogeneic use in a first-degree or second-degree blood relative; or
(c) Is for reproductive use.

*See* 21 C.F.R. § 1271.10(a).

Pursuant to the American Medical Association's 2022 CPT Manual, Professional Edition, Surgery Section, skin substitute grafts include non-autologous human skin (dermal or epidermal, cellular and acellular) grafts (e.g., homograft, allograft), non-human skin substitute grafts (i.e., xenograft), and biological products that form a sheet scaffolding for skin growth. These codes are not to be reported for application of non-graft wound dressings (e.g., gel, powder, ointment, foam, liquid) or injected skin substitutes. Application of non-graft wound dressings is not separately reportable. Removal of current graft and/or simple cleansing of the wound is included, when performed. Select the appropriate code from 15271-15278 based upon location and size of the defect.

## FINDINGS OF FACT AND ANALYSIS

Based on a review of the evidence, I find that Medicare coverage criteria has not been met. The QIC denied the claims holding that the 15271 skin substitute graft and Q4244 Procenta wound covering provided to the Beneficiary is investigational/experimental and that procedure code 15271 was incorrectly billed (File 2, p. 5).

According to Medicare rules and regulations, the use of a drug or biological must be safe and effective and otherwise reasonable and necessary. *See* CMS *Medicare Benefit Policy Manual*, (Internet only publication 100-02), Chapter 15, Section 50.1. Drugs or biologicals approved for marketing by the FDA are considered safe and effective for the purposes of this requirements when used for indications specified on the labeling. Further, Medicare will deny coverage for drugs and biologicals that have not received approval by the FDA unless there are instructions from CMS to the contrary. Drugs and biologicals that contain human cells, tissues and cellular and tissue based products are subject to 21 CFR Part 1271.

Pursuant to 21 C.F.R. § 1271.10(a), for a product to be regulated as a human cells, tissues, and cellular and tissue-based product (HCT/P), it must meet specific regulatory requirements as established under section 361 of the of the Public Health Service (PHS) Act and further delineated in regulations at 21 C.F.R. § 1271.10. In general, if a product does not qualify as an HCT/P, by default the product must be regulated as a drug and/or biological under section 351 of the PHS Act and the Food, Drug, and Cosmetic (FD&C) Act; or must seek approval as a 510K medical device as per the FD&C Act. However, should a product be appropriately designated as an HCT/P under section 361, it may bypass the normal FDA drug/biological/device approval process and go straight to market to be sold to the public. The four criteria are:

(1) The HCT/P is minimally manipulated;
(2) The HCT/P is intended for homologous use only, as reflected by the labeling, advertising, or other indications of the manufacturer's objective intent;
(3) The manufacture of the HCT/P does not involve the combination of the cells or tissues with another article, except for water, crystalloids, or a sterilizing, preserving, or storage agent, provided that the addition of water, crystalloids, or the sterilizing, preserving, or storage agent does not raise new clinical safety concerns with respect to the HCT/P; and
(4) Either:

(i) The HCT/P does not have a systemic effect and is not dependent upon the metabolic activity of living cells for its primary function; or
(ii) The HCT/P has a systemic effect or is dependent upon the metabolic activity of living cells for its primary function, and:
(a) Is for autologous use;
(b) Is for allogeneic use in a first-degree or second-degree blood relative; or
(c) Is for reproductive use.

*See* 21 C.F.R. § 1271.10(a).

According to the American Medical Association's 2022 CPT Manual, Professional Edition, Surgery Section, skin substitute grafts include non-autologous human skin (dermal or epidermal, cellular and acellular) grafts (e.g., homograft, allograft), non-human skin substitute grafts (i.e., xenograft), and biological products that form a sheet scaffolding for skin growth. These codes are not to be reported for application of non-graft wound dressings (e.g., gel, powder, ointment, foam, liquid) or injected skin substitutes. Application of non-graft wound dressings is not separately reportable. Removal of current graft and/or simple cleansing of the wound is included, when performed. Select the appropriate code from 15271-15278 based upon location and size of the defect.

The Appellant argues that use of Procenta in this case is compliant with section 361 of the PHS Act and 21 CFR part 1271. (File 12, p. 2). The Appellant maintains that the Procenta is homologous as it is used to serve as a cover, to offer protection from the surrounding environment, or to retain fluid. *Id.* It is not limited to wound repair in the integumental tissue. (File 12, p. 18). The Procenta graft is minimally altered, not combined with another article, does not have a systemic effect, and does not rely on metabolic activity of living cells. (File 12, p. 3).

The regulation at 21 CFR § 1271.3(c), states that homologous use means the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function of functions in the recipient as the donor. The MAC argues that the basic function of placental tissue is to provide cushion, covering, and protection to a developing fetus.

On August 19, 2020, the FDA's Tissue Reference Group (TRG) sent a letter to Lucina BioSciences, LLC, responding to a request for "a recommendation from the TRG whether [its] placental spongy layer product, branded as Procenta®, [met] the criteria for regulation solely under section 361 of the Public Health Service (PHS) Act and 21 CFR part 1271" (TRG Letter). (File 12, p. 6). The letter concluded:

> Based on the description of the processing steps you provide, Procenta®, when intended to serve as a cover, to offer protection from the surrounding environment, or to retain fluid, would meet the criteria for regulation solely under section 361 of the PHS Act and the regulations in 21 CFR part 1271. However, if Procenta® is intended for drawing moisture, "gliding between two structures," "treatment of chronic wounds," or to "provide lubrication and cushion," these would be nonhomologous uses of the placental spongy layer and, therefore, the product would not be eligible for regulation solely under section 361 of the PHS Act and the regulations in 21 CFR part 1271. The recommendations in this letter pertain to the product as described in your submission. i.e., with no claims made for the use of [redacted].

> Any variation from what you describe in your request for recommendation to the TRG, including but not limited to, a change involving processing or intended use of the product, [redacted], could impact the applicability of this recommendation.

(File 12, pp. 12-13).

In the instant matter, the Beneficiary was seen on November 23, 2022. (File 7, p. 28). The Beneficiary's medical condition was significant for thyroiditis and hypertensive disorder. *Id.* He presented for wound care follow up. *Id.* He reported wearing compression stockings every other day, muscle weakness, arthralgias/joint pain, back pain, and swelling in the extremities. *Id.* He also reported dry skin and laceration, thin skin, and tingling of toes. *Id.* On this date, the Beneficiary received reapplication of Procenta amniotic membrane. File 7, p. 30). The Procenta was used as a wound covering and not a surgically applied skin substitute graft. *Id.* The Beneficiary tolerated the procedure and anesthesia well. *Id.*

For the claim at issue, I find there is insufficient documentation to support medical necessity or general acceptance in the medical community for the reported procedure. Procenta was used to treat a wound to the lower extremity. However, the basic function of placental tissue is to provide cushion, covering, and protection of the donor, a developing fetus. Therefore, the Appellant has not established homologous use by the Beneficiary. As application of Procenta for the given use does not meet the definition of homologous use in accordance with 21 CFR § 1271.3(c), the criteria of 21 CFR § 1271.10(a) are not met. Therefore, the use of Procenta in this matter is regulated as a drug/biological under section 351 of the PHS. The Appellant did not submit documentation demonstrating FDA approval for this use. As such, the Appellant has failed to comply with section 351 of the PHS. Further, as the documentation submitted does not show that the FDA has approved Procenta as safe and effective for the treatment at issue in this matter, the use of Procenta does not meet Medicare medical necessity requirements and must remain denied. Additionally, procedure code 15271 is not correctly billed. The application of Procenta does not qualify as application of a skin substitute graft as this code is not to be reported for application of a liquid or gel non-graft wound dressing. Therefore, the claim must remain denied,

I further find the Appellant is liable for any unpaid amounts. Section 1879(a) of the Act provides for waiver of liability of Medicare payments. This section applies only to a denial by reason of "not medically reasonable and necessary," and when neither the beneficiary, nor the provider/supplier, knew or reasonably could have been expected to know that such services would be excluded from Medicare coverage. The record does not contain an ABN. Therefore, the Beneficiary cannot be held liable for the unpaid amounts. Moreover, it is the provider, and not the Beneficiary's responsibility to properly bill Medicare. Therefore, the provider is liable for any unpaid amounts and may not seek recovery from the Beneficiary.

## CONCLUSIONS OF LAW

Medicare coverage criteria has not been met for the 15271 skin substitute graft and Q4244 Procenta wound covering provided to the Beneficiary on November 23, 2022. The provider is liable for any unpaid amounts pursuant to § 1879.

**ORDER**

For the reasons discussed above, this decision is **UNFAVORABLE.** The Medicare Administrative Contractor is directed to process the claim in accordance with the decision.

**SO ORDERED**

Mark Lacedonia
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

## REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

Form DAB-101 (12/19)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

---

**PRIVACY ACT STATEMENT**

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
Office of Medicare Hearings and Appeals

# NOTICE OF NONDISCRIMINATION

The Office of Medicare Hearings and Appeals (OMHA) complies with applicable Federal civil rights laws and does not discriminate on the basis of race, color, national origin, age, disability, sex, gender identity, or sexual orientation. OMHA does not exclude people or treat them differently because of race, color, national origin, age, disability, sex, gender identity, or sexual orientation.

OMHA:

- Provides free aids and services to people with disabilities to communicate effectively with us, such as:
  - Qualified sign language interpreters
  - TTY calls that are initiated by the caller through a public relay service
  - Written information in other formats (large print, audio, accessible electronic formats, other formats)

- Provides free language services to people whose primary language is not English, such as:
  - Qualified interpreters
  - Information written in other languages

If you need these services, contact (844) 419-3358.

If you believe that OMHA has failed to provide these services or discriminated in another way on the basis of race, color, national origin, age, disability, sex, gender identity, or sexual orientation, you can file a civil rights complaint with the U.S. Department of Health and Human Services, Office for Civil Rights, electronically through the Office for Civil Rights Complaint Portal, available at https://ocrportal.hhs.gov/ocr/portal/lobby.jsf or by mail or phone at:

U.S. Department of Health and Human Services
200 Independence Avenue, SW
Room 509F, HHH Building
Washington, D.C. 20201
1-800-368-1019, 800-537-7697 (TDD)

Complaint forms are available at http://www.hhs.gov/ocr/office/file/index.html.

---

**ATENCIÓN**: si habla español, tiene a su disposición servicios gratuitos de asistencia lingüística. Llame al (844) 419-3358.

**注意**：如果您使用繁體中文，您可以免費獲得語言援助服務。請致電 (844) 419-3358.

**PAUNAWA**: Kung nagsasalita ka ng Tagalog, maaari kang gumamit ng mga serbisyo ng tulong sa wika nang walang bayad. Tumawag sa (844) 419-3358.

**CHÚ Ý**: Nếu bạn nói Tiếng Việt, có các dịch vụ hỗ trợ ngôn ngữ miễn phí dành cho bạn. Gọi số (844) 419-3358.

**ATTENTION**: Si vous parlez français, des services d'aide linguistique vous sont proposés gratuitement. Appelez le (844) 419-3358.

ملحوظة: إذا كنت تتحدث اذكر اللغة، فإن خدمات المساعدة اللغوية تتوافر لك بالمجان. اتصل برقم (866) 207-4466

주의: 한국어를 사용하시는 경우, 언어 지원 서비스를 무료로 이용하실 수 있습니다. (844) 419-3358 번으로 전화해 주십시오.

**ACHTUNG**: Wenn Sie Deutsch sprechen, stehen Ihnen kostenlos sprachliche Hilfsdienstleistungen zur Verfügung. Rufnummer: (844) 419-3358.

**ВНИМАНИЕ**: Если вы говорите на русском языке, то вам доступны бесплатные услуги перевода. Звоните (844) 419-3358.

**ATANSYON**: Si w pale Kreyòl Ayisyen, gen sèvis èd pou lang ki disponib gratis pou ou. Rele (844) 419-3358.

ध्यान दें: यदि आप हिंदी बोलते हैं तो आपके लिए मुफ्त में भाषा सहायता सेवाएं उपलब्ध हैं। (844) 419-3358 पर कॉल करें।

**ATENÇÃO**: Se fala português, encontram-se disponíveis serviços linguísticos, grátis. Ligue para (844) 419-3358.

**ATTENZIONE**: In caso la lingua parlata sia l'italiano, sono disponibili servizi di assistenza linguistica gratuiti. Chiamare il numero (844) 419-3358.

**UWAGA**: Jeżeli mówisz po polsku, możesz skorzystać z bezpłatnej pomocy językowej. Zadzwoń pod numer (844) 419-3358.

خبردار: اگر آپ اردو بولتے ہیں، تو آپ کو زبان کی مدد کی خدمات مفت میں دستیاب ہیں ۔ کال کریں (844) 419-3358

If you need large print, please call 1-844-419-3358

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Miami, FL**

| | | | |
|---|---|---|---|
| Appeal of: | **Family Foot and Leg Center** | OMHA Appeal No.: | **3-12682582007** |
| Beneficiary: | **J. D**[redacted] | Medicare Part: | **B** |
| Medicare No.: | [redacted] | Before: | **Mark Lacedonia**<br>Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Medical & Related: Medical Records | File 5 | 15 | : | 118 |
| Medical & Related: Medical Records | File 7 | 22 | : | 280 |
| Procedural - CMS Levels: MAC POSITION PAPER | File 11 | 1 | : | 8 |
| Procedural - CMS Levels: APPELLANT POSITION STATEMENT | File 12 | 1 | : | 21 |
| Procedural - CMS Levels: APPELLANT WAIVER | File 13 | 1 | : | 3 |
| Procedural - CMS Levels: QIC DECISION | File 2 | 1 | : | 10 |
| Procedural - CMS Levels: REDETERMINATION CASE FILE REQUEST | File 3 | 1 | : | 2 |
| Procedural - CMS Levels: Request for Reconsideration | File 5 | 1 | : | 14 |
| Procedural - CMS Levels: Request for Redetermination | File 7 | 1 | : | 21 |
| Procedural - CMS Levels: MEDICARE APPEAL DECISION | File 7 | 281 | : | 290 |
| Procedural - CMS Levels: NOTICE OF INTENT | File 8 | 1 | : | 3 |
| Procedural - CMS Levels: REP APPOINTMENT AND PREHEARING | File 9 | 1 | : | 5 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : | 206 |
| Procedural - OMHA Level: Notice of Hearing | File 10 | 1 | : | 9 |
| Procedural - OMHA Level: SIGNED DECISION | File 14 | 1 | : | 7 |

| **Non-Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Records not considered: QIC ACKNOWLEDGEMENT | File 4 | 1 | : | 3 |
| Records not considered: QIC DECISION COPY | File 6 | 1 | : | 9 |